# EXHIBIT "A"

EXHIBIT "A"

MICHAEL K. JEANES
Clerk of the Superior Court
By Krizna Rodriguez, Deputy
Date 04/29/2015 Time 14:12:47
Description          Amount
———— CASE# CV2015-050193 ————
CIVIL NEW COMPLAINT   319.00

TOTAL AMOUNT          319.00
        Receipt# 24498982

Gary L. Pryde
Denise E Pryde
~~Defendants~~ PLAINTIFFS
6310 W Prickly Pear Trail
Phoenix, AZ 85083
602-828-6148
gpryde2@cox.net

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

# COUNTY OF MARICOPA

CV2015-050193

| | |
|---|---|
| GARY L PRYDE and DENISE E PRYDE<br><br>Plaintiffs,<br><br>v.<br><br>BMO FINANCIAL GROUP, BMO HARRIS BANK N.A., M & I MARSHALL and ILSLEY BANK, a Wisconsin Corporation and Host Bank, M & I MARSHALL and ILSLEY BANK, an Arizona Corporation and State Bank, BANK OF AMERICA, GREEN TREE SERVICING, COUNTRYWIDE HOME LOANS, AMERICAN WHOLESALE LENDERS, UNKNOWN HEIRS and DEVISEES 1 – 10, DOES 1-10,<br><br>Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**Declaratory Judgement**<br>**Quiet Title**<br>**Injunctive Relief**<br>**Fraud**<br>**Damages Under ARS 33-420(a)** |

**Plaintiffs allege as follows:**

-1-

## PARTIES, JURISDICTION, VENUE

1. Plaintiffs Gary Pryde and Denise Pryde (jointly "Pryde") are husband and wife and are the owners of certain real property commonly known as 6310 W Prickly Pear Trail, Phoenix, Arizona 85083 (the "Property") The Property is located in Maricopa County and is legally described as "Eagle Ridge MCR 460-27 Lot 8". APN # 201-10-572

2. Defendant BMO Financial Group, BMO Harris Bank N.A. & M & I Marshall & Ilsley Bank is a Holding Company, National Charter and former State Bank respectively. BMO Harris Bank N.A.("BMO") is a National Banking Charter that is conducting business in Arizona and claim to be successor in interest to M & I Marshall & Ilsley Bank, "a Wisconsin Corporation" and "an Arizona Corporation." ("MI")

3. Defendants Bank of America ("BofA"), Green Tree Servicing ("GT"), Countrywide Home Loans ("CW") and American Wholesale Lenders ( AWL") are a National Banking Charter, Third Party Servicer, with Countrywide being acquired by Bank of America N.A. and American Wholesales Lenders being a trade name of Countrywide.

4. Pursuant to Rule 10(f), Ariz.R.Civ.P., Defendants Unknown Heirs and Devisees 1-10 and Does 1-10 are fictitiously named persons, partnerships, associations, corporations, limited liability companies, or other entities, whose

true names, identities and status are presently unknown to Plaintiffs. These fictitiously designated Defendants may be liable with the named Defendants and/or have interests in the Property and, therefore, Plaintiffs sues said Defendants by such fictitious names. When the true names and capacities of said Defendants are ascertained, Plaintiffs will amend this Complaint as a matter of right or through leave of Court if required.

5. This Court has original jurisdiction over the persons and subject matter identified and complained of herein pursuant to Ariz. Const. Art. 6, 14 and ARS 12-122 and 12-123

6. Venue is proper in this Court pursuant to ARS 12-401, et seq.

## FACTUAL BACKGROUND

7. In early 2007, M & I Marshall & Ilsley Bank, an Arizona Corporation, ("MI") approached Pryde to refinance their 1st position Mortgage held by MI. MI indicated the monthly payment would go down and they would handle everything from the paperwork, to the appraisal to the recording. Loan application documents completed by MI stated "funding to be by "American Wholesale Lenders" or "Country Home Loans".

8. On February 2, 2007, Pryde executed a Deed of Trust and Promissory Note with American Wholesale Lenders, A New York Corporation ("AWL"). This transaction was brokered by MI under complete direction of MI employees and

MI was paid a broker fee of $ 1,702.50. A Deed of Trust was recorded and a Promissory Note was issued to Pryde with AWL as the lender. MI ordered an appraisal and the property appraised high for $ 950,000 but MI employees placed a value of $ 985,000.00 on the loan application citing "the market is increasing" which was a high enough value for MI to justify the Loan to Values ratio for the property.

9. On February 7, 2007, the transaction funded and MI was paid $ 269,835.40. This was accomplished by securitizing and pooling the new "MI asset" or Pryde Deed of Trust and selling to investors however, no assignment of the note was ever recorded, nor were any other assignments.

10. As a course of action for the refinance, MI needed to subordinate a second and third Home Equity Line of Credit Agreements. MI then subordinated the 2nd and 3rd MI HELOC agreements to Countrywide ("CW"), not the Lender, AWL.

11. On or about July 10, 2011 BMO Financial Group of Montreal acquired M & I Bank, a Wisconsin Corporation and created a National Charter with the merging of Harris Bank N.A. and MI.

12. On or about June of 2012 BofA approached Pryde claiming to be the secured creditor of the AWL Deed of Trust and Promissory Note, offered to refinance the AWL note and lower payments. Pryde unknowingly accepted and proceeded. BMO subordinated the 2nd and 3rd HELOC agreements to BofA.

13. On or about July 18, 2012, a Deed of Release and Reconveyance was prepared by Recon Trust Company listing MERS as the Trustee. No assignments were ever made on the original AWL Promissory Note to Recon Trust nor BofA.

14. On or about May 2013 BofA notified Pryde that the Deed of Trust had been assigned to Green Tree Servicing. ("GT").

15. On or about August 2013 Pryde was notified that the Deed of Trust had been assigned to Fannie Mae. No assignment was recorded and believed to never have been made.

16. On or about December of 2013 BMO sent notice to Pryde that the 2nd position MI HELOC was being called due.

17. On or about April 1, 2014, BMO sent notice to Pryde that the 3rd position HELOC was being called due.

18. On or about May 1, 2014 after reporting nonpayment of both HELOC's by MI to the Tri Merger Credit Bureaus, damaging Pryde's credit for the next several years, MI offered a forbearance agreement with no resolve on the matter. Instead, the agreements asked that Pryde acknowledge that on October 9, 2004 & August 17, 2005 respectively they had executed Deeds of Trust and Promissory Notes made payable to BMO Harris Bank N.A. for total HELOC draw amounts not alleged draw amounts on the HELOC agreements. No Deeds of Trust nor

Promissory Notes were ever issued by MI and BMO Harris Bank N.A. was not in existence until July 2011.

19. On September 29, 2014 Pryde offered a truthful version of a forbearance agreement to BMO in effort to resolve HELOC's. BMO declined to accept.

20. On or about November of 2014, BMO fraudulently reported to the Tri Merger Credit Bureaus that both HELOC's that Pryde had not paid on since called due were now current.

21. On or about December of 2014, BMO fraudulently reported that the 3rd position HELOC had matured, not "called due" as previously noted. There is no maturity date on the HELOC agreements. BMO supplied a "computer print screen" as evidence of maturity date. BMO further reported the 3rd HELOC agreement delinquent in January 2015 and as of March 1, 2015 they have reported the 3rd position HELOC as "written off" to the Tri Merger Credit Bureaus.

22. BMO has fraudulently reported the 2nd position HELOC current even though no payment has been made by Pryde, or allowed to be made since BMO called due in early 2014.

23. On or about November 17, 2014, a Qualified Written Request was sent to GT and BMO for all documents pertaining to all Deeds of Trust, Promissory Notes,

Assignments and who payments are being made too. While both parties responded as required, both parties responded with incomplete information.

24. On or about March 31, 2015, pursuant to ARS 12-1103(b) a 20 Day Notice was sent to BofA/GT and BMO to notify them of this action if they did not comply with the QWR. To date, neither party has presented who the owner of Promissory Note is for the AWL Deed of Trust is or its validity. (Promissory Note attached).

## COUNT ONE
## Quiet Title / Declaratory Judgement

25. Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1-24 inclusive, as though fully set forth herein.

26. Plaintiff alleges that Defendants lack the authority to act as secured creditors because they cannot demonstrate a perfected chain of title for any of the loans.

27. "American Wholesale Lenders" is a trade name and as such one cannot conduct business, execute contracts, sue or maintain any cause of action in the name of a trade name. MI employees knowingly brokered a Deed of Trust and Promissory Note using a trade name, were paid for creating fraudulent documents and then recorded them in violation of ARS 33-420(A)(B)(C)(D) & (E). An originating Lender must be a legal entity. A legal entity is a natural person or Corporation or other business structure formed under the laws of a specific state.

Since AWL, an alleged New York Corporation was a trade name and fictitious entity it has no rights under said security instruments so the original Deed of Trust and Promissory Note are void and unenforceable. In BofA v Linda A. Nash;

"The Note and Mortgage are void because the alleged Lender, American Wholesale Lender, stated to be a New York Corporation, was not in fact incorporated in the year 2005 or subsequently, at any time, by either Countrywide Home Loans, or Bank of America, or any of their related corporate entities or agents." *(Bank of America v Linda A. Nash, et al.,* Case No. 59-2011-CA-004389, Eighteenth Judicial Circuit Court, Seminole County, Florida)

28. Plaintiffs allege this "table funded" "High Speed Swim Lane"(HSSL) transaction hides the source of funding from the Pryde's therefore the secured creditor is unknown since proper assignments were not executed. Plaintiffs further allege that the "AWL Promissory Note" in this case was never transferred nor assigned to BofA. Evidence suggests that it was securitized, sold off and owned by Fannie Mae making it nearly impossible to identify a perfected chain of title.

29. All subsequent Documents are therefore unenforceable. Via the negligent recording of assignments the Defendants have failed to recognize legal protections necessary for the wellbeing of the Plaintiff under Torts 323 and the Defendants are subject to Plaintiff's claims alleging increased risk of economic

harm, emotional distress and potential loss of use of home, including damages for deterioration in health due to the ongoing emotional distress placed onto the Prydes.

30. BofA(as successor in interest to the defunct predatory lender CW)/GT, and its self-tarnished trade name/service mark, come to Pryde with "Dirty Hands" in attempt to correct the wrong. If the original obligation, Note, Mortgage Deed or other Closing Documents are not in Compliance with Law, and factually were at Variance with how the Loan was actually Funded, and by Whom, then the Transfer Does Not make those defects disappear.

31. BofA/CW/GT/MERS and BMO/MI knowingly executed and recorded falsified documents pursuant to ARS 33-420. They also have failed to record lawfully required assignments of Deed of Trust, Promissory Note and substitution of trustee and therefore have misrepresented recorded instruments that are material, and the putative beneficiary is not, in fact, the true beneficiary for the purpose of anti-deficiency protection. *Sitton v. Deutsche Bank Nat. Trust Co.*, 233 Ariz. P.3k 237, 266 n.6 (App.2013). Further, they never properly transferred the Notes to the Securitized loan trust creating a Major Chain of Title problem. In "*Kemp v Countrywide*" the judge disallowed a proof of claim in Bankruptcy Court because it was found certain Notes were never transferred to the transferee

who failed to prove possession of such. Thus their predatory lending practices to "clean up" the mess are void and unenforceable.

32. At the time of BofA refinance, Recon Trust Company prepared a Deed of Release and Reconveyance for the AWL Deed of Trust prepared by MI employees on February 2, 2007. The Trustee is listed as MERS. There were never any assignments made from AWL to MERS or Recon Trust Company. Again, they knowingly submitted falsified, fraudulent documents to the Maricopa County Recorder in violation of ARS 33-420.

33. BMO further has not been able to prove they are in fact the secured creditor on the two HELOC loans against said property.

34. Based on the facts alleged herein, Plaintiffs are entitled to have the AWL Deed of Trust and Promissory Note extinguished along with all subsequent actions pertaining to that loan and to have their title to the Property quieted as against any claims by Defendants. Further, the MI HELOC agreements should be extinguished or halted until such a time that it can be determined who the secured creditor is.

## COUNT TWO
### Unjust Enrichment

35. Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1-34 inclusive, as though fully set forth herein.

36. Based on information and belief, MI employees engaged in this illegal activity in effort remain liquid in a failing economy and to "line their pockets" with investors' money. MI coerced the Prydes into the refinance so MI could then sell the "Paper" to the Securitized Mortgage Market for MI's financial gain.

37. BofA then illegally coerced Pryde into a refinance to "clean up" the American Wholesale Lender paper. In effect, they were also paid by investors wrongfully as they were not the secured creditor at the time, thus defrauding the Government.

38. To the extent that any Defendants received benefit by virtue of refinancing the Prydes for their benefit in the securitized mortgage market, those Defendants have been unjustly enriched at the impoverishment of Prydes and unknowing investors. Based on information and belief this happened twice. Once in 2007 and again in 2012.

### COUNT THREE
### Preliminary and Permanent Injunction

39. Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1-38 inclusive, as though fully set forth herein.

40. Despite Plaintiffs demand and Multiple Qualified Written Request(QWR), Defendants have failed to provide all requested information to show Clear Chain

-11-

of Title, all assignments of the Deed of Trust and Promissory Note and who the true Secured Creditor is.

41. Plaintiffs are entitled to a preliminary and permanent injunctive relief prohibiting MI, BofA and GT from continuing to pursue any further actions and from interfering with Plaintiff's right to the use and possession of the Property and negative credit reporting, until a determination as to the validity and enforceability of the Secured Creditor, proper assignments and Clear Chain of Title is proven and adjudicated.

**WHEREFORE,** Plaintiffs Gary Pryde and Denise Pryde respectfully pray for judgment against the Defendants, its agents or employees, jointly and severally, as follows:

A. Declaring that Plaintiffs Gary Pryde and Denise Pryde's interests in and to Property, be and is quieted;

B. Rule that American Wholesale Lenders is a trade name and therefore may not legally conduct business, including acting as lender on Deeds of Trust or Promissory Notes;

C. Declare that Defendant American Wholesale Lenders, a New York Corporation, Deed of Trust and Promissory Note is extinguished, and that subsequent claim to said real property by Green Tree Servicing / Bank of America and any successors and assigns of these Defendants is

extinguished. Further, Defendants are forever enjoined and restrained from claiming or asserting any right, title, estate, lien, claim or interest in or to the Property, or any part thereof based on any rights under the American Wholesale Lenders Deed of Trust and Promissory Note and all subsequent Promissory Notes and Deed's of Trust executed thereafter;

D. For restitution from BMO Harris Bank N.A., Green Tree Servicing and Bank of America to Plaintiffs equal to the reasonable value of the benefit that Defendants received or may receive as a direct and proximate consequence of their actions to the hardship created on the Plaintiffs;

E. Order BMO Harris Bank N.A. to produce documents to support that they are the legal owner of Home Equity Lines of Credit issued by M & I Marshall & Ilsley Bank, an Arizona Corporation or extinguish the HELOCs;

F. For a preliminary and permanent injunction enjoining Defendants, or any agent or representative of Defendants, from exercising any remedy provided to BMO and BofA/GT, until further ordered of the Court;

G. For compensatory, special and general damages in an amount according to proof at trial;

H. For repayment of monies wrongfully paid to BMO and BofA/GT with interest, if they are not the secured creditor;

I. For punitive damages in an amount to be determined by the Court against the Defendants;

J. For civil penalties pursuant to statute and restitution;

K. For attorney's fees incurred herein;

L. For cost of suit incurred herein; and

M. For such other and further relief as the Court deems just and appropriate.

DATED this 29th day of April, 2015

**Gary L Pryde & Denise E Pryde**
*Plaintiff in Pro Se*

Respectfully submitted,

_____
Gary L Pryde

_____
Denise E Pryde

Prepared by: CHRISTOPHER CHAKFORD

LOAN #: 157299809

# NOTE

FEBRUARY 02, 2007            ARIZONA
[Date]        [City]        [State]

6310 W PRICKLY PEAR TRAIL, GLENDALE, AZ 85310
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 272,400.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
AMERICA'S WHOLESALE LENDER
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.125 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the FIRST day of each month beginning on
APRIL 01, 2007 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on MARCH 01, 2037 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,655.13 .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

Initials: _____

**MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
Page 1 of 2

VMP -5N (0207).01    CHL (010/04)(d)    VMP Mortgage Solutions, Inc. (800)521-7291    Form 3200 1/01




**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
>
> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)      _Denise E. Pryde_ (Seal)
GARY L. PRYDE           -Borrower    DENISE E. PRYDE        -Borrower

_____ (Seal)      _____ (Seal)
                        -Borrower                            -Borrower

*[Sign Original Only]*